## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

|  |  |
|---|---|
| In re | |
| **MATTHEW EARL MOORE** and **LESLIE MAY MOORE**, | Case No. **09-60770-7** |
| Debtors. | |
| **BUDGET FINANCE**, | |
| Plaintiff. | |
| -vs- | |
| **MATTHEW EARL MOORE**, | Adv No. **09-00059** |
| Defendant. | |

## MEMORANDUM OF DECISION

At Butte in said District this 13th day of November, 2009.

In this adversary proceeding the Plaintiff Budget Finance ("Budget") seeks denial of the Debtor/Defendant Matthew Earl Moore's ("Moore") discharge under 11 U.S.C. § 727(a)(2)(A), and seeks exception of its claim from Defendant's discharge under 11 U.S.C. § 523(a)(6) for willful and malicious injury by the Defendant to Budget by removing bench seats, tires and wheels, lug nuts, hubcaps and a battery from Budget's collateral, a 2003 Chevrolet G3500 van, VIN 1GAHG39&131140992 (hereinafter the "van"). Moore, pro se, answered denying the material allegations of the complaint. Trial of this adversary proceeding was held at Missoula on October 19, 2009, and at the conclusion the Court took the matter under advisement. After review of the record and applicable law, Judgment will be entered for the Defendant dismissing both claims for relief asserted in Budget's complaint and this adversary proceeding.

1

This Court has jurisdiction of this cause under 28 U.S.C. § 1334(b).  This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(I) and (J).   This Memorandum of Decision includes the Court's findings of fact and conclusions of law pursuant to F.R.B.P. 7052.

Budget was represented at the hearing by attorney James C. Bartlett ("Bartlett") of Kalispell, Montana.  The Defendant Moore appeared pro se by videoconference from Warm Springs, Montana.  Budget's Exhibits ("Ex.") 1, 2, 3, 4, 5, and 6 were admitted into evidence without objection.  Budget's president Dennis Green ("Green") testified, as did auto repair shop owner Robbie Torgerson ("Torgerson") regarding the condition of the van.  Moore testified by narrative.  His spouse and coDebtor Leslie M. Moore ("Leslie") testified, as did his brother-in-law Ashley Geiser ("Geiser").

## FACTS

Moore was indebted to Budget under a combined note and security agreement, Ex. 1, in the principal amount of $19,966, dated 7/26/04.  Ex. 2 is the notice of lien filing showing Budget is a lien holder against the van as of 8/2/04.  Ex. 5 is a photograph of the van dated 7/26/04, showing the van's passenger side including the wheels and tires.

Green testified that Ex. 1 provided that the van was to be used for personal use, not business.  However, Moore testified that he was unaware of that provision and that Budget's agent knew that Moore was buying the van for his flooring business.  He and Leslie testified that they had a good relationship with Budget and tried to make the payments.

Moore removed three bench seats from the van to protect them from the wear and tear of his flooring business, leaving one bench seat in.  He testified that the bench seats are designed for quick release, with cotter pins which can be pulled out easily.  He placed the three bench seats in

2

a secure storage space rented by his uncle.  Moore retrieved the bench seats from storage when using the van to travel[1].  Leslie testified that she saw that the bench seats were placed in storage to protect them, and that Moore put carpet over the original carpet to protect it.  She denied knowing that harm to Budget would result from placing the seats in storage.

Geiser testified that he observed Moore take very good care of the van, and that he performed regular maintenance on it but that the van broke down 2 or 3 years ago and would not start.  Geiser testified that the wheels were changed at the time the van broke down, about 2 years ago.  Leslie testified that they tried to get financing to repair the van but could not, and did not have the income to repair it.  The van was stored outside on property owned by Leslie's mother and grandmother.

Moore and Leslie filed a joint Chapter 7 bankruptcy case on April 30, 2009, of which notice was sent to creditors, including Budget.  The 2003 Chevrolet van was listed on Debtors' Schedule B as in "poor" condition, with a value stated of $2,000.00[2].  Ex. 4 is a printout of the amount due Budget on the note[3].

Budget filed a motion to modify stay to repossess two vehicles including the van.  After notice and no response the motion to modify stay was granted and Budget was authorized to pursue its nonbankruptcy remedies against the vehicles, including the van.  Leslie testified that the Debtors were appreciative to Budget because it had worked with them.

---

[1]With the bench seats, Moore testified, the van could carry 15 passengers.

[2]The van is listed along with other vehicles at item 25 of Schedule B.

[3]Ex. 4 states the amount due on 4/6/09 as $17,206.96, increasing to $17,346.96 on 7/23/09.

3

Green testified that Budget took possession of the van and discovered several missing parts, which are identified on Ex. 3 as the original tires, wheels, lug nuts, hub caps, three bench seats for the rear passenger compartment, and the battery. He testified that the left front tire was flat, Ex. 6A[4], that there were only two lug nuts on each tire. Leslie testified that the lug nuts had been in the van when she set them outside next to the van while emptying it when Budget repossessed it.

Moore admitted removing the tires, wheels, hubcaps and battery. He testified that the battery was dead and would not start the van, and he took it out to try to fix it. He testified that the original tires were bald and the wheels were in poor condition, and that he had purchased replacement aluminum mag wheels from Les Schwab. Leslie agreed that the original tires had been worn down.

On direct examination by Budget's counsel, at first Moore admitted that he knew Budget would be harmed if the van was without the seats, battery and wheels. However, later Moore testified that he did not know that Budget would be harmed at the time he removed the missing items, and that he removed the bench seats to protect them in safe and dry storage. Moore testified that he had no intention to harm Budget and that he intended to pay Budget off. He testified that, in hindsight, he sees that Budget was harmed by the absence of the wheels and seats. However, he testified that he does not feel he committed a wrongful act and did not willingly try to harm Budget. Leslie and her brother Geiser both testified that Moore did not purposely cause any damage or harm to the van, and that he took good care of it for 5 years.

Green and Moore spoke about the van on the phone after Budget took it back. Green

---

[4]Ex. 6 is a series of photographs of the van taken after it was repossessed.

admitted that Moore mentioned a possibility that he would replace the tires, and testified that Moore did not know about the missing seats. At some point, Green testified, he learned about the storage unit where the bench seats had been stored. Moore testified that he was not aware when the bench seats were sold from the storage unit, and that he did not learn about them being sold until he called his uncle and learned he had lost the storage. Moore called the storage manager who told them the bench seats were long gone.

Green testified that a front window of the van was broken, that the windshield was cracked and the carpeting was not serviceable, but that the dashboard was not broken. Green did not know whether Moore mistreated the van or whether there were dents or scratches, but he testified that it was not taken care of and not usable. Moore and Leslie testified that they would have cleaned the van up but that Budget did not want to give them any time before repossessing it. Leslie testified that the carpet just needed to be vacuumed.

Robbie Torgerson has an auto repair shop and testified about the van's condition after the repossession. He testified that the wheels on the van were older GM style wheels which did not match the van's brake calipers so were not usable for the van to drive, and that each wheel had only 1 or 2 lug nuts, not the required 8. Torgerson admitted that the wheels on the van would suffice to hold the van in an upright position off the ground. Moore testified that he was not aware the wheels he put on were the wrong size. Moore testified that when the van broke down he took the aluminum mag wheels off and the van sat in storage, and that he never intended to drive it.

Torgerson testified that all four bench seats were missing, but under cross examination he admitted that only three were missing, and that the battery was missing. He testified that the

5

correct size wheels would cost $125 each, plus $600 for new tires or $300 for a set of used tires. Lug nuts cost $80 for a set, and a replacement battery would cost $65. Torgerson testified that a set of bench seats for the van from a salvage yard would cost at least $800.

Moore testified that his perception was that he was obligated to give Budget tires, wheels and bench seats, but not at brand new cost. Moore testified that he had aluminum mag wheels, which he purchased from Les Schwab's, which he lent to a friend, and he offered them to Budget along with a set of lug nuts. Leslie disagreed with her spouse, and testified that the replacement mag wheels may still be on the property.

## DISCUSSION

Budget seeks exception of its entire claim, plus interest and attorney's fees, from Moore's discharge under § 523(a)(6), and seeks denial of his discharge under § 727(a)(2)(A). Moore denies that he had intent to harm Budget.

The principal purpose of the Bankruptcy Code is to grant a "fresh start" to the "honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 127 S.Ct. 1105, 1107, 166 L.Ed.2d 956 (2007). The "fresh start" is explained by the Ninth Circuit Bankruptcy Appellate Panel in *Albarran v. New Forms, Inc. (In re Albarran)*, 347 B.R. 369, 379 (9th Cir. BAP 2006):

> The general policy of bankruptcy law favors allowing an honest debtor to discharge debts and to make a fresh start free from the burden of past indebtedness. *See Lines v. Frederick*, 400 U.S. 18, 19, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970). Thus, because a debtor in bankruptcy is assumed to be poor but honest, there is a presumption that all debts are dischargeable unless a party who contends otherwise proves, with competent evidence, an exception to discharge. *See Brown v. Felsen*, 442 U.S. 127, 128-29, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); Hon. Barry Russell, BANKRUPTCY EVIDENCE MANUAL ¶ 301.60, p. 870 (2006 ed.).

The corollary to this policy is that only the "honest but unfortunate" debtor is entitled to an entirely unencumbered fresh start. *Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

*Grogan*, in further explaining the "fresh start" policy of the Bankruptcy Code, states that "a central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.' *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)." *Grogan*, 498 U.S. at 286, 111 S.Ct. at 659.

In a nondischargeability claim the burden of proof falls on the creditor to prove the elements by a preponderance of the evidence. *Grogan*, 498 U.S. at 291, 111 S.Ct. at 661 ("we hold that the standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard."); *Branam v. Crowder (In re Branam)*, 226 B.R. 45, 52 (9th Cir. BAP 1998), *aff'd*, 205 F.3d 1350 (9th Cir. 1999). When applying the preponderance of the evidence standard, "[i]n addition to what a debtor may admit to knowing, the bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury producing action." *Albarran*, 347 B.R. at 379, quoting *Carrilo v. Su (In re Su)*, 290 F.3d 1140, 1146 n.6 (9th Cir. 2002). However, in order to give effect to the fresh start, exceptions to discharge are strictly construed against an objecting creditor and in favor of the debtor. *Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir. 1992); *Klapp v. Landsman (In re Klapp)*, 706 F.2d 998, 999 (9th Cir. 1983).

## I. § 523(a)(6).

Section 523(a)(6) excepts from discharge any debt "(6) for willful and malicious injury by

the debtor to another entity or to the property of another entity." *Barboza v. New Form Inc. (In re Barboza)*, 545 F.3d 702, 706 (9th Cir. 2008); *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202,1205 (9th Cir. 2001), *cert. denied*, 533 U.S. 930, 121 S.Ct. 2552, 150 L.Ed.2d 718 (2001). As far as injury, the Court finds and concludes that Budget satisfied its burden of proof that it was injured, but not to the full extent of its debt as alleged in paragraph 2 of the complaint. Rather, the evidence shows that the injury is limited to the extent of the cost of replacing the missing three bench seats, four wheels and tires, a set of lug nuts and a battery. The dashboard, according to Green, was not damaged and Ex. 6 does not show extensive damage to the van. That does not end the enquiry under § 523(a)(6).

The Ninth Circuit in *Barboza* reversed a summary judgment excepting a claim for "willful" copyright infringement from discharge under § 523(a)(6). 548 F.3d at 707. Even though the term "willful" is used in copyright infringement cases, the Ninth Circuit stated that it is not equivalent to the term "willful" under § 523(a)(6) because in copyright infringement cases "willful" can be based on intentional or merely reckless behavior, and injuries resulting from recklessness are not sufficient to be considered willful injuries for exception for discharge under § 523(a)(6). *Barboza*, 548 F.3d at 708, citing *Kawaauhau v. Geiger*, 523 U.S. 57, 60-61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).

The Ninth Circuit also reversed and remanded the case in *Barboza* because the courts below did not separately analyze the "malicious" prong of § 523(a)(6), and although some overlap may exist between the two prongs the Ninth Circuit requires a separate analysis for both the "willful" and "malicious" prongs. *Barboza*, 545 F.3d at 711; *Jett v. Sicroff (In re Sicroff)*, 401 F.3d 1101, 1105 (9th Cir. 2005); *Su*, 290 F.3d at 1144; *Transamerica Finance Corp. v.*

8

*Littleton (In re Littleton)*, 942 F.2d 551, 554 (9th Cir. 1991) (per curiam); *Jercich*, 238 F.3d at 1209.

This Court must analyze the willful and malicious prongs of § 523(a)(6) separately in compliance with *Barboza*, *Sicroff*, *Jercich*, and *Su*.  Budget has the burden of proof under § 523(a)(6) to except its claim from Moore's discharge under both prongs.  The Court finds that Budget failed to satisfy its burden under both the "willful" and "malicious" prongs.

### II.  Willful.

An injury is willful under § 523(a)(6) if the debtor intends the consequences of his actions.  *Geiger*, 523 U.S. at 61, 118 S.Ct. 974; *Albarran*, 347 B.R. at 384.  The Ninth Circuit wrote in *Su*, 290 F.3d at 1144:  "The holding in *In re Jercich* is clear:  § 523(a)(6) renders debt nondischargeable when there is either a subjective intent to harm, or a subjective belief that harm is substantially certain."  Subjective belief includes actual knowledge that harm is substantially certain to result.  *Su*, 290 F.3d at 1145-46; *Albarran*, 347 B.R. at 384.

Subjective intent may be gleaned from objective factors and circumstantial evidence which tends to establish what the debtor must have actually known when taking the injury-producing action.  *Su*, 290 F.3d at 1146 n.6; *Albarran*, 347 B.R. at 384.  Reckless disregard is insufficient to establish willfulness under § 523(a)(6).  *Geiger*, 523 U.S. at 61, 118 S.Ct. 974; *Su*, 290 F.3d at 1145-46.  The Ninth Circuit wrote in *Su*:

> That the Bankruptcy Code's legislative history makes it clear that Congress did not intend § 523(a)(6)'s willful injury requirement to be applied so as to render nondischargeable any debt incurred by reckless behavior, reinforces application of the subjective standard.  The subjective standard correctly focuses on the debtor's state of mind and precludes application of § 523(a)(6)'s nondischargeability provision short of the debtor's actual knowledge that harm to the creditor was substantially certain.

*Su,* 290 F.3d at 1145-46.

Budget several times tried to get Moore to testify that he knew that harm was certain to result from his removing the wheels, tires and bench seats, but Moore testified several times that he did not know at the time that harm to Budget would result. The evidence supports Moore's denial.

This Court observed the demeanor of the witnesses while testifying under oath, and cross examination, and the Court finds that Moore, Leslie and Geiser are credible witnesses. *Allen v. Iranon*, 283 F.3d 1070, 1078 n.8 (9th Cir. 2002); *Public Fin. Corp. v. Taylor (In re Taylor)*, 514 F.2d 1370, 1373-74 (9th Cir. 1975); *Anderson v. City of Bessemer*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *See also*, *Casey v. Kasal* , 223 B.R. 879, 886 (E.D. Pa. 1998). They all testified that Moore took good care of the van and did not intend to harm Budget when he removed the wheels, battery and seats from the van. The only evidence in the record is that Moore did not learn the bench seats had been sold until he called his uncle after the repossession.

No evidence exists in the record that Moore intended the consequences to Budget of his actions, either by a subjective intent to harm Budget or a subjective belief that harm to Budget was substantially certain. *Geiger*, 523 U.S. at 61, 118 S.Ct. 974; *Albarran*, 347 B.R. at 384; *Su*, 290 F.3d at 1144.

### III. Malicious.

The "malicious" requirement is satisfied when plaintiff shows "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *Jercich*, 238 F.3d at 1209. In the Ninth Circuit conduct must be both willful and malicious for a debt to be excepted under § 523(a)(6), and specific findings must be made that

10

the conduct was willful and malicious.  *Barboza*, 545 F.3d at 706, 711.

The Court finds that Budget failed to satisfy its burden by a preponderance of the evidence to prove the "malicious" prong of § 523(a)(6) that Moore's acts in removing the bench seats, wheels, tires, lug nuts, hubcaps and battery were done intentionally to harm Budget or that his acts necessarily caused Budget injury.  The evidence is that the original tires were bald, the battery was dead, and the wheels had worn out to the point Moore bought replacement mag wheels.  The bench seats were placed in storage to protect them, not to intentionally harm Budget, and it was only through nonpayment by Moore's uncle, not Moore, that the seats were sold according to the evidence.  Since Budget failed to satisfy its burden under § 523(a)(6) to show Moore caused Budget willful and malicious injury by a preponderance of the evidence, Judgment shall be entered against Budget dismissing Count One of the complaint, Ex. 1.

### IV.  § 727(a)(2)(A).

Budget seeks denial of Moore's discharge under § 727(a)(2) which provides that the court shall grant the debtor a discharge unless –

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –
>
> > (A) property of the debtor, within one year before the date of the filing of the petition; or
> >
> > (B) property of the estate, after the date of the filing of the petition.

*Hansen v. Moore (In re Hansen)*, 368 B.R. 868, 876 (9th Cir. BAP 2007).

"A claim for denial of discharge under § 727 is construed liberally and in favor of the discharge and strictly against a person objecting to the discharge."  *Roberts v. Erhard (In re*

*Roberts)*, 331 B.R. 876, 882 (9th Cir. BAP 2005), citing *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1342 (9th Cir. 1986).

*Hansen* quotes *In re Beauchamp*, 236 B.R. 727, 732 (9th Cir. BAP 1999) that the party seeking denial of discharge under § 727(a)(2) must prove by a preponderance of the evidence: "1) a disposition of property, such as transfer or concealment, and 2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act of disposing of the property." 368 B.R. at 876, quoting *Beauchamp*, 236 B.R. at 732. The Court finds that Budget completely failed its burden to prove subjective intent by Moore by a preponderance of the evidence.

Discharge may be denied under § 727(a)(2)(A) only upon a finding of actual intent to hinder, delay, or defraud a creditors. *Adeeb*, 787 F.2d at 1342-43; *In re Devers*, 759 F.2d 751, 753 (9th Cir.1985). Constructive fraudulent intent can not be the basis for denial of discharge. *Adeeb*, 787 F.2d at 1343. However, it is sufficient under the plain language of § 727(a)(2)(A) to deny discharge upon a showing of intent to hinder <u>or</u> delay <u>or</u> defraud creditors. *In re Searles*, 317 B.R. 368, 379 (9th Cir. BAP 2004), *aff'd.*, 212 Fed.Appx. 589 (9th Cir. 2006). In other words, intent to defraud need not be shown because mere proof of intent to hinder or to delay is sufficient. In *Wolkowitz v. Beverly (In re Beverly),* 374 B.R. 221, 243 (9th Cir. BAP 2007), *aff'd*., 551 F.3d 1092 (9th Cir. 2008), citing *Searles*. The BAP wrote in *Beverly* that under § 727(a)(2), "[m]ere <u>intent</u> to hinder, delay, or defraud a creditor is all that is needed to deny a discharge under § 727(a)(2)(A)." *Beverly,* 374 B.R. at 243. As above, intent may be inferred from surrounding circumstances including "badges of fraud" that constitute circumstantial evidence of intent, or a course of conduct. *Id.* (citations omitted).

Budget failed to show intent by Moore to hinder, delay, or defraud Budget when he

removed bald tires, worn out wheels and a dead battery from the van.  Moore's storage of the bench seats for safe keeping is not evidence of intent to hinder, delay or defraud Budget.  While the sale of the bench seats for nonpayment of storage fees by Moore's uncle harmed Budget, it failed to show that Moore intended to harm Budget when he placed the seats in storage.

The evidence shows that Budget's failure to recover the lug nuts and replacement wheels resulted from its rush to take possession of the van.  It did not give Leslie time to clean out the van or round up the missing items.  The Debtors' continued willingness to deliver the replacement wheels to Budget is evidence against a finding of intent to hinder, delay or defraud Budget.  The Court finds that Budget failed to satisfy its burden of proof under Count Two by a preponderance of the evidence, and the remainder of the complaint filed in this adversary proceeding will be dismissed.

## CONCLUSIONS OF LAW

1.  This Court has jurisdiction of this cause under 28 U.S.C. § 1334.

2.  This is a core proceeding involving Plaintiff's claims for exception from Defendant's discharge of its debt under 28 U.S.C. § 157(b)(2)(I) and (J) and 11 U.S.C. § 523(a)(6), and objection to discharge under § 727(a)(2)(A), which are strictly construed against an objecting creditor and in favor of the debtor.  *Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir. 1992); *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1342 (9th Cir. 1986).

3.  The Plaintiff Budget Finance failed to satisfy its burden of proof by a preponderance of the evidence with respect to its claim for exception from Defendant's discharge of its claim under § 523(a)(6) for willful and malicious injury to Budget Finance.

4.  The Plaintiff failed to satisfy its burden of proof by a preponderance of the evidence

with respect to its objection to Defendant's discharge under § 727(a)(2)(A).

**IT IS ORDERED** a separate Judgment shall be entered in favor of the Defendant

Matthew Earl Moore and against the Plaintiff Budget Finance in conformity with the above

dismissing both claims for relief set forth in Plaintiff's complaint in this adversary proceeding.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

14